

THE ATTORNEY GENERAL

OF TEXAS

GERALD C. MANN
~~XXXXXXXXXXXXXXXXXXXXXX~~PPEIRD
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable Karl L. Lovelady, Chairman
Committee on Education
The Senate
Austin, Texas

Dear Senator Lovelady:          Opinion No. 0-5213

Re: Constitutionality of House Bill 164,
concerning the refunding of bonds
issued for school purposes.

We beg to acknowledge receipt of your request for a reconsid-
eration of our Opinion No. 0-5213, accompanied by an opposing brief of
authorities and argument. We have carefully reconsidered our original
opinion, in the light of the opposing arguments, and in the light of
our own further investigation of the pertinent constitutional provis-
ions. We are yet of the opinion that House Bill No. 164, if enacted
into law, would be unconstitutional.

Your original request for an opinion was as follows:

"There has been referred to the Senate Committee
on Education House Bill No. 164, a copy of which is at-
tached hereto. On behalf of the committee, I should
like to request your opinion whether the bill is con-
stitutional, and particularly whether it violates either
or all of the following provisions:

"'a. Section 16 of Article I;
"'b. Section 51 of Article III, as amended;
"'c. Section 55 of Article III;
"'d. Section 4 of Article VII, as amended (1883).'"

The bill violates Section 4 of Article VII of the Constitu-
tion, which declares:

"The lands herein set apart to the Public Free
School fund, shall be sold under such regulations, at
such time, and on such terms as may be prescribed by
law; and the Legislature shall not have power to grant
any relief to purchasers thereof. The Comptroller shall
invest the proceeds of such sales, and of those hereto-
fore made, as may be directed by the Board of Education
herein provided for, in the bonds of the United States,

the State of Texas, or counties in said State, or in
such other securities, and under such restrictions
as may be prescribed by law; and the State shall be
responsible for all investments."

This provision of the Constitution is a specific one, deal-
ing directly with the investment of the proceeds of sales of public
free school lands, and therefore is of the first importance.

The Constitution is the source of all governmental powers.
A power or jurisdiction exclusively conferred by the Constitution upon
an officer, court, or governmental agent whatsoever, may not be taken
away or abridged in any manner whatsoever by the Legislature. (Maud
v. Terrell, 200 S. W. 375; Adamson v. Connally, 112 S. W. (2) 287).

The above-quoted section of Article VII of the Constitution
vests in the Comptroller, under the direction of the Board of Educa-
tion the power -- jurisdiction -- to invest the proceeds of the sales
of her public free school lands in the bonds therein stated, or in
such other securities under such restrictions as may be prescribed by
law. This vestiture of jurisdiction is exclusive, and the power and
discretion therein conferred may not be exercised in any other way.

The provision that such investments in the securities there-
in mentioned, "under such restrictions as may be prescribed by law"
necessarily means restrictions prescribed by law in aid or further-
ance of the exercise of the jurisdiction and powers conferred, and not
in denial or destruction thereof. Thus, the Legislature might pre-
scribe under this clause the relative or maximum amounts of the dif-
ferent classes of permissible investments, the maturities and rates
of interest of such securities, and the like, but it would have no
power to substitute its discretion for that of the Comptroller, un-
der the direction of the Board of Education.

The concluding words of the section above quoted are very
significant. "The State shall be responsible for all investments"
can only mean that when the Board of Education, acting through the
Comptroller, has invested in securities authorized therein, in other
words, has exercised its jurisdiction there conferred, the State
shall make good any and all losses to the Public Free School Fund to
the extent of a guarantor of the securities. This liability of the
State generally is a constitutional one, and the Legislature is
powerless to absolve it therefrom. The sanctity of our Public Free
School Fund is such that the people through the Constitution have
in this emphatic manner seen fit to protect it so far as is humanly
or governmentally possible.

When the Board of Education and the Comptroller have acted
in the exercise of the power conferred upon them, and have made invest-
ments in certain securities, within the scope of that power, they have
exercised their jurisdiction, and the benefits of such investments in-
stantly become indelibly fixed in the Public Free School Fund of the

State, to the protection of which the State's financial resources are pledged.

In view of what we have said, it is unnecessary for us to consider or decide whether the bill violates Section 16 of Article I, Section 51 of Article III, Section 55 of Article III, or any other constitutional provision.

The brief of argument accompanying your request for a reconsideration combats the suggestion or possibility that the bill violates Article 1 Section XVI of the Constitution, declaring:

"No bill of attainder, ex post facto law, retro-
active law, or any law impairing the obligation of
contracts, shall be made."

The argument points out that the State as owner of the securities held by the Board of Education may validly authorize the refunding of bonds, such as are involved here, at a lower rate of interest than that of the bonds to be surrendered, for which contention the case of Rhodes Drilling Co. v. Allred, 70 S. W. (2) 576 is cited.

We do not consider that case as being in point. There, the question presented was "whether these sections of the Constitution, or any of them, prohibits the Legislature from authorizing the diminishing or reducing, for a consideration, of an executory obligation to the State in an existing contract."

The court considered and decided the question in the light of Sections 44, 51, 53 and 55 of Article III of the Constitution prohibiting the Legislature from granting extra compensation after a public service has been performed, or contract entered into for the performance of the same; granting money out of the Treasury on any claim when same shall not have been provided for by pre-existing law; granting or authorizing any grant of public money; granting or authorizing the granting of any extra compensation to any officer or contractor after service has been rendered, or a contract entered into and performed in whole or in part; releasing or extinguishing or authorizing the releasing or extinguishing in whole or in part of any indebtedness, liability, or obligation to the State, or to any county or municipal corporation.

The court overruled the contention that the new or supplementary contract authorized by the bill violated these provisions of the Constitution, or any of them, upon the express ground fully stated and elaborately argued, that the supplementary contract was not a gratuity or relinquishment by the State, but on the other hand, was a valid contract upon an adequate consideration.

In view of what we have said, it is not necessary for us to decide whether or not the bill is subject to any other constitutional invalidity.

The original opinion to you is withdrawn and this one is substituted therefor.

Very truly yours,

APPROVED APR 29, 1943     ATTORNEY GENERAL OF TEXAS
GERALD C. MANN
ATTORNEY GENERAL OF TEXAS     s/  Ocie Speer
                                     Ocie Speer
                                     Assistant

THIS OPINION
CONSIDERED AND APPROVED
IN
LIMITED CONFERENCE